## (C~~HANCERY~~/CIRCUIT) COURT OF TENNESSEE
## 140 ADAMS AVENUE   MEMPHIS, TENNESSEE 38103
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS
### SUMMONS IN CIVIL ACTION

NO. CT- CC4899-01    AD DAMNUM $ _____    AUTO ☐  OTHER ☐

ALICE C. ALLEN

_____    Home Address

vs.   **PLAINTIFF**    Business Address

VALERO ENERGY CORP., TPI PETROLEUM,
INC., MICHIGAN REUTILIZATION, LLC, and    Home Address
PREMIER OIL COMPANY, LLC

**DEFENDANT**    Business Address

TO THE DEFENDANT(S): VALERO ENERGY CORP. via its Registered Agent, The Corporation Trust Company
1209 Orange Street                       SERVE THROUGH SECRETARY OF STATE
Wilmington, Delaware 19801-1120

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on   John McQuiston, Evans & Petree, PC   Plaintiff's attorney, whose address is  1000 Ridgeway Loop Rd., Ste. 200, Memphis, TN 38120 , telephone  (901) 525-6781  within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JIMMY MOORE, Clerk
KENNY ARMSTRONG, Clerk & Master

TESTED AND ISSUED   9-25  , 20 07    By _____, D.C.

### TO THE DEFENDANT(S):

NOTICE: Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

### COST BOND

I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs not to exceed $500.00 in this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same.

Witness My Hand this _____ day of _____, 20 _____
Certification when applicable

Surety

I, KENNY ARMSTRONG, Clerk & Master    I, JIMMY MOORE, Clerk of the Circuit
of the Chancery Court, Shelby County,    Court, Shelby County, Tennessee, certify
Tennessee, certify this to be a true and    this to be a true and accurate copy as filed
accurate copy as filed this _____    this  9 25 2007
KENNY ARMSTRONG, Clerk & Master    JIMMY MOORE, Clerk

By: _____, D.C.          By: _____, D.C.

EXHIBIT A

**RETURN ON SERVICE OF SUMMONS**

I HEREBY CERTIFY THAT I HAVE SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20 \_\_\_\_ at _____ M. a copy of the summons and a copy of the Complaint to the following defendents

_____

Mark Luttrell, Sheriff

By _____

Deputy Sheriff

**PRIVATE PROCESS SERVER**

I HEREBY CERTIFY THAT I HAVE SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20\_\_\_\_ at _____M. a copy of the summons and a copy of the Complaint to the following defendants

(PLEASE PRINT THE FOLLOWING)

Private Process Server _____

Address _____

Phone _____

Company _____

Signature _____

Other manner of service:

_____

I hereby certify that I have NOT served this Summons on the within named defendant(s) _____

because _____ is / are not to be found in this County for the following reason(s): _____

Mark Luttrell, Sheriff

This _____ day of _____, 20 \_\_\_\_. By _____

Deputy Sheriff

NO. _____ D. _____

IN THE (CHANCERY/CIRCUIT) COURT OF TENNESSEE FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

SUMMONS IN CIVIL ACTIONS

Alice C. Allen         PLAINTIFF

VS.

Valero Energy Corp., TPI Petroleum, Inc., Michigan Reutilization LLC and Premier Oil Company, LLC         DEFENDANT

Came to hand _____

Attorney for Plaintiff _____

Tel. No. _____

Back

IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

ALICE C. ALLEN,

    Plaintiff,

v.

    No. CT 004899-07
    Div. VI
    Jury Demanded

VALERO ENERGY CORPORATION,
TPI PETROLEUM, INC., MICHIGAN
REUTILIZATION, LLC, and PREMIER
OIL COMPANY, LLC,

    Defendants.

## COMPLAINT

1. Plaintiff Alice C. Allen ("Lessor") is a resident of Shelby County, Tennessee. She is the successor in interest to Virginia Cartwright, the Lessor pursuant to the Lease Agreement dated 16 January, 1975 with the Defendant Vickers Petroleum Corporation (herein the "Lease"). A copy of the Lease is attached as Exhibit A to this Complaint. The Lease had an original term of twenty-five (25) years ending on the 30th day of September 1990, and the Lease was automatically extended and renewed for three (3) successive renewal terms of five (5) years each to the 30th day of September 2005.

2. Vickers Petroleum Corporation was merged into Total Petroleum, Inc., a Michigan corporation, and Total Petroleum, Inc. was the surviving corporation.

3. Total Petroleum, Inc. also known as TPI Petroleum, Inc. was acquired by Ultramar Diamond Shamrock Corporation on or about September 25, 1997.

4. On or about December 31, 2001, Ultramar Diamond Shamrock Corporation was merged into Valero Energy Corporation, a Delaware corporation. Valero Energy Corporation dominates and controls TPI Petroleum, Inc. and Michigan Reutilization, LLC, to the harm of Plaintiff as set forth herein, and is the successor to them and the real party in interest.

5. As used herein the term "Lessee" or "Tenant" refers to Vickers Petroleum Corporation and its successors in interest by merger, sublease, assignment or otherwise.

6. The Defendant TPI Petroleum, Inc. was from time to time the Tenant or a subtenant of the premises. On or about January 1, 2006, TPI Petroleum, Inc. was merged into Michigan Reutilization, LLC whose address is One Valero Way, San Antonio, Texas 78249.

7. The Defendant The Market Group, LLC was from time to time a subtenant. On information and belief, it was merged into Premier Oil Company, LLC a Tennessee limited liability company with offices and principal place of business in Memphis, Shelby County, Tennessee. "Market Operations Group" is another name used by The Market Group, LLC.

8. From time to time the Tenant subleased the property. The Plaintiff-Landlord was not provided with copies of the subleases. However, at various times, each of the Defendants represented that they were responsible for paying rent to the Landlord and/or otherwise confirmed their responsibility for the leased premises. Landlord relied on those representations and Defendants are estopped to deny their responsibility to perform the lease and to lawfully use and occupy the premises.

9. The Tenant and subtenants were required to surrender the premises to Plaintiff-Lessor on September 30, 2005 in as good condition as the premises were in at the commencement of the Lease on January 16, 1975 except for reasonable wear and tear. This duty was violated.

10. The Tenant and subtenants were required, under the terms of the Lease, at their own cost and expense, to keep and maintain the premises in good condition, including any improvements thereon.

11. The Tenant and/or its subtenant(s) installed underground gasoline storage tanks on the premises and failed to maintain the underground gasoline storage tanks in good condition.

12. The Plaintiff Landlord reached an agreement with Independent Bank for the Bank to lease the major part of the premises to commence at the expiration of the Lease. However, petroleum contamination was discovered to be emanating from the onsite underground gasoline storage tanks. That constitutes a nuisance and unlawful condition which is continuing. Defendants left the defective underground gasoline storage tanks on the premises, and the Defendants willfully refused to remedy the situation. This prevented the consummation of the proposed lease with Independent Bank, to Plaintiff's substantial harm.

13. The Defendants were placed on notice of the situation, including the desire of the Landlord to lease to Independent Bank, and demand was made that they remove and dispose of the underground storage tanks. However, they willfully and unfairly refused to do so in violation of the Lease, and in violation of state and federal environmental laws.

14. The Lease provides that the Tenant shall comply with all applicable laws and ordinances relating to health and nuisance arising out of Lessee's manner of occupancy of said premises. The Defendants have breached the Lease in this regard, and in failing to return the premises to the Landlord at the termination of the Lease in as good condition as required by the Lease.

15. As a result of the wrongdoing of the Defendants, the Landlord has suffered damages including but not limited to: inability to receive rents from new tenants, such as

Independent Bank; incurred engineering, legal and other professional fees and costs in dealing with the environmental condition due to the Defendants' defaults and breaches; and has incurred and is incurring out-of-pocket expenses to remedy conditions on the premises that should have been remedied by the Defendants. The Tenant and subtenants promised to hold Lessor harmless at all times from damage or injury to the property. This duty was violated.

16. The Defendants have willfully and unfairly prevented the leasing of the premises to Independent Bank, they have interfered with Landlord's prospective advantage, they have willfully, unfairly and deceptively kept Plaintiff in the dark and in a state of ignorance concerning the shifting of responsibility between and among the Defendants, they have willfully and unfairly refused to remedy their continuing violation of environmental laws, they have willfully and unfairly created and maintained a nuisance on the property, and they have willfully and unfairly imposed on Plaintiff the burden of dealing with their violations of environmental law. Their actions constitute unfair acts and practices effecting the conduct of trade or business in violation of T.C.A. §47-18-101 et seq., including but not limited to TCA 47-18-104(a), entitling the Plaintiff to treble damages and attorney's fees as provided in T.C.A. §47-18-109. The Plaintiff is also entitled to recover its losses and its professional fees, including both engineering and attorney's fees, pursuant to the terms of the Lease.

17. The damages of Landlord are continuing. They include taxes that should have been paid by Lessee, the cost and expense of repairs, maintenance, environmental fees and lost rental of $6000 per month from the end of the Lease on September 30, 2005, plus prejudgment interest of 10% per annum. Single damages exceed $150,000.00 and are continuing.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

1. That a jury be impaneled to try this case;

2. For judgment against Defendants for the single damages suffered by the Plaintiff;

3. For judgment for treble damages pursuant to T.C.A.§47-15-101 et seq. (including subsections 104(b) and 109);

4. For recovery of attorney's fees, costs and expenses; and

5. For such other relief as may be appropriate in the premises.

Respectfully submitted,

Evans & Petree PC

*/s/ John McQuiston*

John McQuiston, II (BPR #7806)
1000 Ridgeway Loop Road, Suite 200
Memphis, Tennessee 38120
(901) 525-6781

5

## LEASE AGREEMENT

THIS LEASE AGREEMENT is made this __16th__ day of January, 1975, between Mrs. A. B. Cartwright, a femme sole, whose address is 475 South Perkins Road, Memphis, Tennessee 38117, jointly and severally, hereinafter called Lessor, and VICKERS PETROLEUM CORPORATION, a Kansas corporation, 125 North Market, Post Office Box 2240, Wichita, Kansas 67201, hereinafter called Lessee.

PLEASE

_____
INITIAL

1. Lessor does hereby demise and lease unto Lessee and Lessee does hereby hire and take all that certain parcel of land situated at the southeast corner of Poplar Avenue and Germantown Road, having a frontage of 200 feet on Poplar Avenue and a frontage of 286.7 feet on Germantown Road, in Germantown, Shelby County, Tennessee, together with any improvements and equipment thereon and together with all appurtenances thereto and all the right, title and interest of Lessor in and to land lying in all streets, highways and rights of way abutting on or appurtenant to said premises, all of said leased property being hereinafter referred to as the premises.

The premises are more particularly described as follows: Part of the Jere L. Crook 4.59 acre tract located at the Southeast corner of Germantown Road and U.S. Highway 72 and more particularly described as follows: beginning at the intersection of the east line of Germantown Road with the south line of U.S. Highway 72; and running thence on a magnetic bearing of South 63 degrees 00 minutes East along the south line of U.S. Highway 72 a distance of 200 feet to the northwest corner of the property now or formerly owned by Frances G. Hickman and sister Jane A. Hickman, as described in Book 1967, Page 444, Shelby County Register's Office, thence South 27 degrees 00 minutes west along the westerly line of said Hickman property 244.38 feet to a corner of said Hickman property; thence North 78 degrees 42 minutes West along Hickman's line 145.46 feet to a point in the east line of Germantown Road; thence North 11 degrees 48 minutes East along the east line of Germantown Road 3.30 feet to an angle point; thence North 15 degrees 06 minutes East continuing along the east line of Germantown Road 286.70 feet to the point of beginning, and containing 45,512 square feet.

It is understood that Lessee initially intends to lease this property for the construction and operation of a gasoline service station and related facilities. If (a) Lessee is unable to obtain zoning of the above property for a gasoline service station and related facilities, or (b) there is any public or private restriction, whether by way of plat, deed, easement or otherwise, prohibiting or making impractical the construction or operation of a service station and related facilities on the property in accordance with Lessee's plans and specifications (including signs and curb cuts), or (c) Lessee is unable to obtain all permits for such construction and operation, or (d) the cost of any necessary site preparation to make the property suitable for such use shall exceed an aggregate of $2,000.00, or (e) there is any encumbrance or defect or exception to Lessor's title, as reflected by a title report or title binder, which Lessor does not remove within thirty (30) days, or (f) if the Federal Energy Administration does not allocate to Lessee at this site a base period supply volume satisfactory to Lessee, then this lease may be cancelled by Lessee giving Lessor ten (10) days' written notice of Lessee's intention to cancel, and Lessor shall return or cause to be returned to Lessee any deposit or other payment made by Lessee. In the event all the above conditions have not been met or waived within six (6) months of the date this lease is executed by both parties, either party may cancel this lease upon delivering twenty (20) days' prior written notice to the other and this Lease Agreement shall be void on the twentieth (20th) day after the delivery of such notice unless Lessee waives the remaining conditions prior to said termination date.

When all the contingencies set forth herein have been satisfied or waived by Lessee, the parties shall execute in recordable form a short form lease setting forth the correct legal description of the premises, the effective commencement date of the lease, the original term of the lease, the term of each renewal option and any further option rights.

Page 1 of 7

2. The original term of this lease shall commence on the first day of the month following the day on which all the above contingencies are either satisfied or waived and shall end on the 30th day of September, 1990. No rent shall be due from Lessee or accrue unless and until a motor vehicle service station building with all necessary driveways has been completely erected and constructed on the leased premises and the operation thereof commenced or four months have expired from the date Lessee was first in possession of the premises with all necessary permits, whichever first occurs. If the rental shall be due under this clause on a day other than the first day of the month, then the rental shall be prorated for that month.

3. As rental for the use and occupancy of said premises, Lessee agrees to pay Lessor and Lessor agrees to accept, Two Thousand Dollars ($2,000.00) per month, payable on the first day of each month for which rental is due for approximately the first five (5) years of this lease. Said monthly rental shall be payable in the following manner: 94% of the amount reserved as rental herein shall be made payable to the Lessor, her heirs or assigns; and 6% of said amount shall be made payable to Alan Isaacson Company, Realtor, its successors or assigns, and both checks shall be forwarded to the Agent named herein. In the event the rental is adjusted as described below, the same percentages shall apply. Beginning with the rental due for the month of October, 1980, and for each five (5) year period thereafter that this lease is in effect, including any extensions or renewals thereof, the rental for each five (5) year period shall be recomputed. The formula of said recomputation is as follows: the monthly rental for each five (5) year period as stated above shall be an amount computed by multiplying a fraction determined by using the Consumer Price Index for All Items as published by the Bureau of Labor Statistics of the United States Department of Labor for the latest month available preceeding the beginning date of such recomputation as numerator and the same Index for January, 1975, as a denominator (using the same base year for both numerator and denominator) times the rental of $2,000.00 per month. If said Index is no longer compiled, then another Index generally recognized as authoritative shall be substituted by agreement; but if the parties do not agree, the substitute Index shall be selected by a majority determination of three (3) arbitrators appointed for the purpose, one being appointed by the Lessor, one by the Lessee, and a third by the two arbitrators appointed by Lessor and Lessee.

4. This lease shall be automatically extended and renewed for three successive renewal terms of five (5) years each unless Lessee shall deliver to Lessor at least sixty (60) days prior to the expiration of the original term or any renewal term then in effect a notice that this lease will terminate at the expiration of the term then in effect. Said extensions shall be upon the same terms and conditions as under the original term except for rent as provided for in the paragraph above.

5. Lessee shall pay the rent as aforesaid, and all charges for water, gas, and electricity supplied to it, and at the expiration or other termination of this lease, or any renewal or extension thereof, quit and surrender said premises to Lessor in as good condition as the same now are, except for such changes, alterations and additions as are hereinafter required or permitted to be made by Lessee or Lessor, and reasonable wear and tear and damage by fire and the elements.

6. Lessee shall at its own cost and expense keep and maintain in good condition the premises, including any improvements thereon.

7. Lessee shall comply with all applicable laws and ordinances relating to health, nuisance and fire arising out of Lessee's manner of occupancy of said premises during said term.

8. Lessee shall hold Lessor harmless at all times during the term of this lease, or any extension or renewal thereof, upon claims or damage or injury to persons or property as a result of anything occurring on or about the leased premises.

9. As additional rent for said premises, the Lessee covenants and agrees to pay and discharge from time to time, within the time required by law, throughout the entire term of this lease, plus options if exercised, the amount of all general and special taxes of all kinds, and all charges and assessments, general or special, by whomsoever lawfully imposed, on such real estate or the improvements thereon. Lessor hereby agrees that Lessee, in the name of Lessor, but at Lessee's sole expense, may protest any assessment before any taxing authority or board or maintain any necessary legal action in reference to said assessment or for the recovery of any taxes paid thereon. All taxes and assessments, which Lessee covenants and agrees to pay pursuant to this lease and that are not paid when due, may be paid by Lessor. Any amount so paid by Lessor will be due and payable by Lessee on demand by Lessor and shall include the amount paid by Lessor, any penalties imposed by the governmental bodies, a reasonable attorney's fee, and interest on said amount at the rate of ten percent (10%) per annum.

10. Lessee shall at all times during the term of this lease, at its own cost and expense, keep all buildings on the leased premises insured in a responsible insurance company against loss by fire and other damage within the extended coverage endorsement for not less than their full and insurable value above foundations, and will keep all such insurance in full force and effect during the term of this lease or any renewal thereof. If any or all of the buildings and other improvements on the premises shall be damaged or destroyed by fire or other cause, Lessee shall be entitled to the entire insurance proceeds, but there shall be no abatement whatsoever of any rent.

11. Lessee may erect and install on the premises such buildings, improvements and equipment as it may desire, and may demolish, remove or rebuild any building or other improvement now on said property. Lessee may install gasoline tanks and underground equipment on, and may cut curbs, construct, maintain and use driveways over, upon and across the premises. In the event Lessee constructs a new service station building on the premises, such building shall be and become a part of the real estate and shall not be removable by Lessee at the termination of this lease. All other improvements (except paving), equipment, signs, pumps, tanks, advertising devices and other property constructed or installed on said premises by Lessee shall at all times remain the personal property of Lessee and in no sense fixtures or part of the real estate, and Lessee shall have the right at any time during the term of this lease or any extension thereof or within thirty (30) days after the termination of this lease to remove the same or any part thereof from said premises.

12. If at any time during the term of this lease or any renewal or extension thereof, Lessee or any of its subtenants are unable to obtain any license or permit required by law or municipal ordinance for the operation of a retail gasoline service station as installed and licensed at the inception of this lease, or if the Lessee or any of its subtenants shall be unable to obtain the renewal of any such license or permit which may have been granted for such purpose, or if Lessee is prevented by operation of law or enjoined from using said premises or any part thereof for the storage of gasoline and other petroleum products or by-products or other motor fuel for the operation of a retail

PLEASE
INITI/

gasoline service station as heretofore described. Lessee shall have the right, at its option, to terminate this lease on not less than thirty (30) days' notice to Lessor.

13. No real property which is not presently used for the retail sale of automotive fuel and lubricants and which is located within 1,000 feet of the premises and either now or subsequently, directly or indirectly, owned, leased or controlled by Lessor shall be developed or used, in whole or in part, for the retail sale of automotive fuel and lubricants, provided, however, that this provision shall not apply to the premises. This covenant shall be deemed and construed as a covenant running with the land in favor of Lessee, its successors or assigns. Any deed or other instrument with respect to any interest of Lessor within said area delivered to any other person shall contain a restriction of said property for the same period.

14. If the whole or any part of the leased premises or any interest therein is taken or condemned under the power of eminent domain, or any similar legal power, or conveyed in lieu of such taking or condemnation, with the exception of the areas mentioned in the following paragraph, and as a result thereof the use and enjoyment by the Lessee of the leased premises is substantially impaired, the Lessee may, at its option but without prejudice to any rights and claims which it may otherwise have on account of such taking, condemnation or conveyance, (a) terminate and cancel this lease, or (b) if the taking be partial, remain in possession of the remaining portion of the premises in which event the rent herein reserved shall be decreased in proportion to the amount or portion of such premises as shall be taken, condemned or conveyed as aforesaid.

It is understood and agreed by the parties hereto that the City of Germantown has proposed to Lessor to take a strip of land as delineated in two Right of Way Acquisition Plats dated 6/25/74, job number 16103053, along Germantown Road for the widening of Germantown Road, and, if this land is taken, it shall have no effect whatsoever on this lease and is excepted from the preceding paragraph. If a portion of the leased premises along U.S. Highway 72 (Poplar Pike) is taken for the widening of said highway and such portion is twenty (20) feet or less in width as measured perpendicularly to said highway, then the rent reserved herein shall be decreased in proportion to the amount or portion of such premises as shall be taken, condemned or conveyed, but Lessee shall have no right to cancel and terminate the lease. All compensation for the proposed taking described in this paragraph shall be for the benefit of Lessor with the exception of actual expense incurred by Lessee resulting from such taking.

15. If Lessee shall fail to pay any installment of rent when same is due and payable, as herein provided, or shall fail in the performance of any of the covenants, agreements, terms or conditions of this lease by Lessee to be performed, observed or complied with; or if Lessee shall vacate the leased premises, then and in any such event, if such default or condition shall continue for more than thirty (30) days after written notice from Lessor to Lessee specifying the rent due or the other matter or thing by which Lessor claims Lessee is in default without Lessee paying the rent or having in good faith promptly commenced action to rectify said default and prosecute said action to completion with diligence, Lessor may declare this lease terminated and thereupon Lessor may reenter the leased premises without further notice or demand without being in any manner liable therefor, and Lessor may hold the leased premises free from any further liability on the part of the Lessor hereunder, or Lessor may enter the leased premises as aforesaid and, as agent of Lessee, re-let the same for the balance of the term of this lease, or for a shorter or longer term, and may receive the rent therefor, applying the same, first to the payment of the expense of such reletting, and second to the payment of rent due and to become due by these presents, Lessee remaining liable for and agreeing hereby to pay any deficiency. The filing of any petition in bankruptcy or insolvency, or for reorganization under the Bankruptcy Act, either by or against Lessee, or an assignment for the benefit of creditors by Lessee, shall constitute a breach of this lease, and Lessor shall forthwith on such breach be entitled to collect damages therefor as provided by law, and in addition thereto, Lessor shall

have the rights of termination and re-entry as hereinabove set forth. Lessee expressly waives the benefit of any provision of law now in force or hereafter enacted giving or reserving to Lessee, or to any person claiming under or through Lessee, any right to the redemption or the repossession of the leased premises, or any part thereof, after the termination of this lease by declaration or re-entry by Lessor as hereinabove provided. Any such termination of this lease likewise shall terminate any and all options granted Lessee.

16. Lessee shall not suffer or permit mechanic's liens to be filed against the fee of the premises nor against the Lessee's leasehold interest in said premises by reason of work, labor, services or materials supplied or claimed to have been supplied to the Lessee or anyone holding the premises or any part thereof through or under the Lessee, and nothing in this lease contained shall be deemed or construed in any way as constituting the consent or request of the Lessor, expressed or implied, by inference or otherwise, to any contractor, subcontractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration or repair of or to the leased premises or any part thereof.

If, whenever and as often as any mechanic's or other similar lien is filed against the property hereby leased, or any part thereof, purporting to be for or on account of any labor done or materials or services furnished in connection with any work in or about the leased premises, done by, for or under the authority of Lessee or anyone claiming by, through or under it, Lessee shall either discharge the same of record within ten (10) days after Lessor notifies Lessee in writing of the filing of such lien or shall within said ten (10) days deposit with a title insurance company doing business in the city where the premises is located, an amount equal to the amount of said lien, plus twenty percent (20%) thereof, with irrevocable instructions to it to apply said sum in satisfaction of a final judgment upholding said lien or to return said sum to Lessee in the event said lien shall be discharged; and upon compliance with the provisions of this sentence, Lessee shall be deemed not to be in default hereunder by reason of any mechanic's lien being filed against the property hereby leased.

17. Any notice from one party to the other hereunder shall be in writing and shall be deemed to have been duly given if delivered personally, or mailed, enclosed in a registered or certified postpaid envelope, addressed to the party to be notified at such party's address as shown above in this lease, with a copy to be sent to Alan Isaacson Company, Realtor, 3254 Winbrook Drive, Memphis, Tennessee 38116. Either Lessor, Lessee or Agent may at any time change such address by delivering or mailing, as aforesaid, notice at least ten (10) days previously stating the change.

18. Lessor warrants that Lessor alone has good and merchantable fee simple title to the leased premises free and clear of any liens or encumbrances, has the right to lease the property hereby lease free and clear of any liens or encumbrances. Lessor warrants and agrees to defend the title thereto, and to reimburse and hold Lessee harmless from all damages and expenses which Lessee may suffer by reason of any encumbrance, defect or restriction in such title. Lessor shall put Lessee in actual possession at the beginning of the term of this lease. Lessee shall have the right to assign or sublet said premises, or any part thereof, but such assignment or subletting shall not relieve Lessee or its obligations under this lease. Lessor covenants that Lessee, upon the payment of the rent and the performance of its covenants herein contained, shall and may peaceably and quietly have, hold and enjoy said premises during the term hereof and any renewal or extension thereof.

19. If Lessee continues in possession of the premises after the expiration of this lease, or any extension or renewal thereof, without having renewed the same or without having entered into a new lease, Lessee shall thereafter be deemed to be a tenant from month to month on all of the terms and conditions set forth in this lease as modified except as to the duration thereof.

20. This lease was negotiated by Alan Isaacson Company, Realtor, acting as Agent for the Lessor, and Lessor agrees to pay Alan Isaacson Company, Realtor, its successors or assigns, the usual commission of the first month's rent of the term reserved herein, plus six percent (6%) of subsequent rentals for services in negotiating this lease; also to pay Alan Isaacson Company, Realtor, its successors or assigns, the said usual commission for any lease extension or renewal that may be entered into by Lessor with Lessee, or by or with their respective heirs, successors, or assigns, covering the within leased premises. Also, the Lessor or its successor in title agrees to pay Alan Isaacson, Realtor, its successors or assigns, a sales commission of six percent (6%) of the total sales price if the within described premises are sold to Lessee, or his successors or assigns, during the original or any extended or renewed term of the lease.

21. The covenants and agreements contained in this lease are binding upon and shall inure to the benefit of Lessor and Lessee and their respective heirs, legal representatives, successors and assigns, and if there be more than one person named as Lessor, each of the covenants and agreements of Lessor shall be deemed joint and several.

_Virginia Dunn Cartwright_
_by Al Cartwright Jr. Attorney in fact_
LESSOR

VICKERS PETROLEUM CORPORATION

By _Don Swanson_
Vice-President        LESSEE

ATTEST
_Thomas E. Hickey_
Secretary

Page 6 of 7

STATE OF TENNESSEE  )
                    ) ss.
COUNTY OF SHELBY    )

On this _16th_ day of January, 1975, before me personally appeared _A.D. CARTWRIGHT, JR._, to me known to be the person who executed the foregoing instrument in behalf of Mrs ~~A. B.~~ VIRGINIA DUNN Cartwright and acknowledged that he executed the same as the free act and deed of said Mrs ~~A. B.~~ VIRGINIA DUNN Cartwright.

WITNESS my hand and Notarial Seal subscribed and affixed in said State and County, the day and year in this certificate above written.

                                    _William R. Tildale_
                                    Notary Public

My commission expires: _4-19-77_


STATE OF _KANSAS_   )
                    ) ss.
COUNTY OF _SEDGWICK_)

On this _7TH_ day of _FEBRUARY_, 1975, before me, the undersigned, a Notary Public in and for said State and County, personally appeared _DON SWANSON_, to me personally known, who being by me duly sworn did say that he is _VICE PRESIDENT_ of the Vickers Petroleum Corporation, Lessee in the foregoing lease, and that the seal thereto affixed is the corporate seal of said corporation by authority of its Board of Directors and said _DON SWANSON_ acknowledged said lease to be the free act and deed of said corporation.

WITNESS my hand and Notarial Seal subscribed and affixed in said State and County, the day and year in this certificate above written.

                                    _Paula S. Baird_
                                    Notary Public

My commission expires: _1-21-76_